UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ABDULLAH BILAL,<br><br>    Plaintiffs,<br><br>    v.<br><br>LEHMAN, et. al,<br><br>    Defendants. | CASE NO. C04-2507 JLR<br><br>ORDER |

## I. INTRODUCTION

This matter comes before the court on cross motions for summary judgment (Dkt. ## 70, 71, 81), a Report and Recommendation of the Honorable James P. Donohue, United States Magistrate Judge (Dkt. # 99), and the pleadings and exhibits. Having reviewed the record, the court GRANTS Defendants' motions for summary judgment (Dkt. ## 70, 71) and DENIES Mr. Bilal's motion for partial summary judgment (Dkt. # 81). This order, which constitutes the ruling of the court, does not adopt the Report and Recommendation.

## II. BACKGROUND

Plaintiff Abdullah Bilal is a Fiqh Al-Sunnah Muslim who alleges that prison officials refused to provide him with a halal diet consistent with his religious beliefs. Halal is a term from the Qu'ran meaning "lawful" or "permitted." Bilal Decl., Ex. 24.

ORDER – 1

While there is some disagreement among Islamic legal scholars on the precise requirements of a halal diet, Mr. Bilal believes that a halal diet should include meat slaughtered by Muslims in the name of Allah. The parties do not contest the sincerity of Mr. Bilal's belief.

At the time of commencement of this suit in January 2005, Mr. Bilal was incarcerated at the Monroe Correctional Complex ("Monroe"), a prison operated by the Washington Department of Corrections ("DOC"). It is uncontested that Muslim inmates at Monroe who request a halal diet receive ovo-lacto vegetarian meals.[1] In his original complaint, Mr. Bilal alleged that DOC officials violated his civil rights by refusing to serve him halal meat consistent with the tenets of his religion. Compl. ¶ 1.

On June 1, 2005, during the course of this lawsuit, Mr. Bilal completed his prison sentence at the DOC's Monroe facility and was transferred to the Washington State Special Commitment Center ("SCC"). The SCC is a secure treatment facility for sex offenders. Mr. Bilal resides at the SCC indefinitely–no release date has been set. It is uncontested that, on or about March 16, 2006, the SCC began serving Mr. Bilal a halal meat diet and continues to do so today. On March 20, 2006, Mr. Bilal amended his complaint to allege that the SCC, in addition to the DOC, violated his civil rights by denying him halal meat. See Am. Compl.

Mr. Bilal's amended complaint names Washington State as the administrator of both the DOC and SCC; Mark Kucza, Associate Superintendent of Monroe; Dan Williams, statewide religious manager for the DOC; Henry Richards, Superintendent of the SCC; Alan McLaughlin, Associate Superintendent of the SCC; and Greg Duncan,

---

[1] Ovo-lacto vegetarian denotes a vegetarian meal including eggs and milk. For a short period of time, in July 2004, Muslims at Monroe were provided with Kosher meat meals. See DOC Defs.' Mot., Ex. 2.

ORDER – 2

Chaplin of the SCC. See id. Defendants are represented by two separate counsel, which reflects the institutional distinction between the DOC, a correctional facility, and the SCC, a treatment-oriented mental health facility operated by the Department of Social and Health Services. The court's references to "DOC Defendants" include Washington State, Mr. Kucza, and Mr. Williams. The court's references to "SCC Defendants" include Washington State, Mr. Richards, Mr. McLaughlin, and Mr. Duncan.

Mr. Bilal seeks declaratory, injunctive, and monetary relief under 42 U.S.C. § 1983 ("§ 1983") alleging that Defendants' failure to provide him with halal meat violates his constitutional right to free exercise of religion under the First Amendment, violates his constitutional right to equal protection under the Fourteenth Amendment, and violates the Establishment Clause under the First Amendment. Mr. Bilal also alleges that Defendants imposed a substantial burden on the exercise of his religious rights in violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et. seq*.

### III.  ANALYSIS

In resolving a motion for summary judgment, the court must draw all inferences from the admissible evidence in the light most favorable to the non-moving party. Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the moving party meets its burden, the opposing party must show that there is a genuine issue of fact for trial. Matsushita Elect. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The opposing party must present significant and probative evidence to support its claim or defense. Intel Corp. v.

ORDER – 3

Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991). For purely legal questions, summary judgment is appropriate without deference to the non-moving party.

Cross motions for summary judgment do not warrant the conclusion that one of the motions must be granted. The court must still determine whether summary judgment for either party is appropriate. See Fair Housing Council of Riverside County, Inc. v. Riverside Two, 249 F.3d 1132, 1139 (9th Cir. 2001).

**A.    Mr. Bilal's Claims for Injunctive and Declaratory Relief are Moot.**

To pursue a claim in federal court, a party must maintain a live controversy through all stages of the litigation process. See Di Giorgio v. Lee, 134 F.3d 971, 974 (9th Cir. 1998) ("To qualify for adjudication in federal court, an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.") (citation omitted). If an action or a claim loses its character as a live controversy, then the action or claim becomes moot, and the court lacks jurisdiction to resolve the underlying dispute. See Ruiz v. City of Santa Maria, 160 F.3d 543, 549 (9th Cir. 1998) ("Generally, an action is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.") (citation omitted).

It is uncontested that Mr. Bilal is no longer incarcerated at the DOC's Monroe facility. An inmate's release from prison while his claims are pending generally moots any claims for injunctive or declaratory relief relating to the prison's policies unless the suit has been certified as a class action. Preiser v. Newkirk, 422 U.S. 395, 403 (1975) (holding inmate's request for declaratory judgment rendered moot by inmate's transfer to another prison); Dilley v. Gunn, 64 F.3d 1365, 1368-69 (9th Cir. 1995) (holding inmate's request for injunctive relief rendered moot by inmate's transfer to another prison); Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991) (same); Darring v. Kincheloe, 783 F.2d 874, 876 (9th Cir. 1986) (same). Mr. Bilal's completion of his sentence and transfer

ORDER – 4

from Monroe moots his claims for declaratory and injunctive relief[2] against the DOC Defendants.

As to the SCC Defendants, it is uncontested that the SCC has been serving Mr. Bilal a diet including halal meat since on or about March 16, 2006. Mr. Bilal agrees that his current diet satisfies the mandates of his religion. See Bilal Dep. at 90, 108, 123. Nevertheless, Mr. Bilal contends that this court should grant him declaratory and injunctive relief because the SCC will refuse him a halal diet at some point in the future if the court dismisses his claims.

Mr. Bilal argues that his claims against the SCC fall under an exception to the mootness doctrine. A defendant's voluntary cessation of an activity moots a case only if it is " absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." Adarand Constructors, Inc. v. Slater, 528 U.S. 216, 222 (2000) (quoting United States v. Concentrated Phosphate Export Assn., Inc., 393 U.S. 199, 203 (1968)). The "heavy burden" of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the defendant. Adarand, 528 U.S. at 222 (quotations and citations omitted). Voluntary cessation will not render a case moot unless events have completely and irrevocably eradicated the effects of the alleged violation. County of Los Angeles v. Davis, 440 U.S. 625, 631 (1979). For example, in Lindquist v. Idaho State Bd. of Corrs., 776 F.2d 851, 853-54 (1985), the Ninth Circuit considered mootness in the context of an inmate's claim that a prison law library did not meet constitutional standards. In finding that improvements to the law library rendered the claim moot, the court observed that the prison had acted in good faith in making the

---

[2] The mootness doctrine applies only to prospective relief; it does not bar claims for monetary damages. See Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 8 (1978).

ORDER – 5

improvements, that there was no indication that the prison would abandon its efforts, and that the existence of a new library completely eradicated any possible effects of previous conditions. Id. at 854.

The SCC has meet its burden to demonstrate that it will not repeat its allegedly wrongful behavior. First, that the SCC endeavored to accommodate Mr. Bilal's religious dietary requests is not subject to material dispute. SCC Chaplain Duncan testified that, to his knowledge, Mr. Bilal was the first resident in the institution's history to request a halal meat diet. Duncan Decl. ¶ 9. The evidence shows that although Mr. Bilal requested "halal" meals upon his June 2005 transfer to the SCC, he initially described halal as non-pork.[3] In late June or early July 2005, Mr. Bilal expressed concern that the SCC's standard pork-free diet might contain pork-based products. Duncan Decl. ¶ 12. He asked Chaplain Duncan whether he could receive a kosher diet to ensure pork-free meals. Id. Chaplain Duncan initially declined but ultimately approved this request. Id. ¶¶ 12, 14, 15. Mr. Bilal began receiving kosher meals on or about July 22, 2005. Bilal Dep. at 80-81. The record indicates that from July 2005 until January 2006, Mr. Bilal made no formal complaints or requests concerning the SCC's provision of kosher meals. McLaughlin Decl. ¶ 4. Most significantly, it is uncontested that since March 2006, Mr. Bilal has been receiving halal meals that include meat slaughtered in the name of Allah. The SCC's current practice completely eradicates the effects of the SCC's past actions; Mr. Bilal agrees that he is satisfied with his current diet. See Bilal Dep. at 90, 108, 123.

---

[3]Mr. Bilal's "Religious Restriction Diet Request" intake form indicated his faith was Islam and his diet requirement was "no pork." Bilal Dep, Ex. 2. An intake progress note stated that Mr. Bilal "is getting meals without pork due to religious parameters." Denny Decl., Attach. A. Mr. Bilal's medical intake form indicated that his special dietary needs were "no pork." Bilal Dep., Ex. 6. Mr. Bilal agrees that he told the intake staff that his request for halal required a "no pork" diet . Bilal Dep. at 42-3, 79.

ORDER – 6

The court regrets that, for whatever reason, Mr. Bilal did not begin receiving a diet that fully meets the mandates of his religious beliefs until approximately ten months after his arrival at the SCC. Despite this delay, there is no evidence before the court to suggest that Mr. Bilal's halal meat diet has been, or is likely to be, suspended. The court declines to accept Mr. Bilal's speculation that the SCC's denial of a legal obligation to provide such meals throughout the course of this lawsuit demonstrates bad faith; the SCC's legal defense should not be construed as evidence against them.

In addition to the court's finding of mootness on constitutional and prudential grounds, Mr. Bilal's RLUIPA claims against the SCC also fall prey to what is essentially a mootness provision under the statute itself. The RLUIPA provides: "A government may avoid the preemptive force of any provision of this chapter by changing the policy or practice that results in a substantial burden on religious exercise, by retaining the policy or practice and exempting the substantially burdened religious exercise, by providing exemptions from the policy or practice for applications that substantially burden religious exercise, or by any other means that eliminates the substantial burden." 42 U.S.C. § 2000cc-3 (e). While there are few cases to consider this "safe harbor" provision, the SCC's provision of halal meat to Mr. Bilal constitutes a change practice that eliminates any burden on religious exercise under the RLUIPA. Cf. Boles v. Neet, 402 F. Supp. 2d 1237, 1240 (D. Colo. 2005) (finding prison's change in policy to allow inmate to wear religious garments rendered RLUIPA claim moot under 42 U.S.C. § 2000cc-3 (e)).

For all of these reasons, Mr. Bilal's claims for prospective relief pose non-justiciable questions. The court grants summary judgment in favor of the DOC and SCC Defendants on Mr. Bilal's claims for declaratory and injunctive relief. Because the court does not reach the merits of prospective claims, the court dismisses these claims without prejudice.

ORDER – 7

**B.     The Eleventh Amendment Bars Mr. Bilal's Claims for Damages against Washington State and the Named Defendants in Their Official Capacities.**

Mr. Bilal seeks monetary relief under § 1983 and RLUIPA against Washington State ("the State") and DOC and SCC employees in their official capacities. Under the Eleventh Amendment, a citizen of a state may not sue his or her own state. Hans v. Louisiana, 134 U.S. 1, 10 (1890). Along this vein, if a suit seeks damages against a state officer in his official capacity for his wrongful acts, the Eleventh Amendment bars the suit against the officer because the state is the real party in interest. See Quern v. Jordan, 440 U.S. 332, 338-40 (1979). The parties do not contest that the DOC and SCC are both State entities, the court therefore concludes that the Eleventh Amendment bars Mr. Bilal's recovery of monetary damages against the State and State employees in their official capacity.

While the immunity conferred by the Eleventh Amendment is subject to certain exceptions, those exceptions do not salvage Mr. Bilal's monetary claims. Ex parte Young holds that the Eleventh Amendment does not preclude federal courts from granting prospective relief against state officers to prevent continuing violations of federal law. 209 U.S. 123, 155-56 (1908). Under Ex Parte Young, Mr. Bilal would otherwise be free to pursue prospective claims under § 1983 and RLUIPA. See, e.g. Mayweathers v. Newland, 314 F.3d 1062, 1069-70 (2003) (holding that inmate could pursue RLUIPA claims for *prospective injunctive relief* against state officials without running afoul of the Eleventh Amendment under Ex Parte Young). As discussed above, those claims are moot. While a state's immunity to suits by private citizens is also subject to the exception that a state may consent to suit, Douglas v. Cal. Dept. Of Youth Auth., 271 F.3d 812, 817 (9th Cir. 2001), the State has not expressly waived its immunity in regard to Mr. Bilal's § 1983 and RLUIPA claims. See DOC Defs.' Answer to Am. Compl.

ORDER – 8

Accordingly, the court grants summary judgment in favor of the DOC and SCC Defendants on monetary claims against the State and named individuals in their official capacities.

**C.    Qualified Immunity Precludes an Award of Monetary Damages against the DOC and SCC Officials in Their Individual Capacities.**

The doctrine of qualified immunity protects state officials from personal liability for on-the-job conduct so long as the conduct is objectively reasonable and does not violate an inmate's clearly-established federal constitutional and statutory rights. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (citations omitted). Conversely, a state official may be held personally liable if he knew or should have known that he was violating a plaintiff's clearly-established federal rights. Id. The qualified immunity standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

The threshold question in considering the qualified immunity defense is whether, "[t]aken in the light most favorable to the party asserting the injury . . . the facts alleged show the [defendant's] conduct violated a constitutional [or statutory] right." Saucier v. Katz, 533 U.S. 194, 201 (2001) (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)). If, viewing the alleged injuries in the light most favorable to the plaintiff, the Court finds that a plaintiff's right appears to have been violated, it proceeds to the next step, which is to inquire whether the right was clearly established. Id.

The factual allegations, taken in a light most favorable to Mr. Bilal, are not complicated. Mr. Bilal's sincerely held religious belief mandates that he eat Halal meat. Mr. Bilal was denied a Halal meat diet consistent with this belief during his incarceration at the DOC. Upon Mr. Bilal's transfer to the SCC, he did not immediately receive a Halal meat diet. In considering whether these facts show statutory or constitutional violations, the court concludes that Mr. Bilal's claim under the Establishment Clause

ORDER – 9

does not survive even the first prong of the qualified immunity analysis. Mr. Bilal appears to contend that Defendants endorsed one religion over another by providing meals that accord with Jewish beliefs while denying meals that accord with Muslim beliefs. Mr. Bilal fails to allege sufficient facts to show that the SCC or DOC "excessively entangled" the State with the Jewish faith. The institutions' practices to accommodate religious dietary requests do not offend the Establishment Clause; the provision of kosher meals to Jewish inmates simply seeks to alleviate a government-created burden on private religious exercise. See Cutter v. Wilkinson, 544 U.S. 709, 713 ("This Court has long recognized that the government may accommodate religious practices without violating the Establishment Clause."). Mr. Bilal's allegations are more properly anchored as free exercise or equal protection claims.

As to Mr. Bilal's remaining claims, for purposes of the qualified immunity analysis, the court assumes that Mr. Bilal's factual allegations establish the following constitutional and statutory violations: (1) Defendants violated Mr. Bilal's right to free exercise of religion under the First Amendment by interfering with his right to religious exercise; (2) Defendants violated the RLUIPA by substantially burdening his right to religious exercise; and (3) Defendants violated the Equal Protection clause under the Fourteenth Amendment by intentionally denying him a religious diet that includes halal meat while providing similarly situated Jewish inmates with meals containing kosher meat.

Considering the three claims set forth above, the court concludes that the second prong of the analysis indicates that defendants are entitled to qualified immunity. There can be no doubt that the rights of free exercise of religion and equal protection are clearly established. Likewise, the law is clear that under RLUIPA, no government may impose a substantial burden on the religious exercise of an individual confined to an institution.

ORDER – 10

See 42 U.S.C. § 2000cc *et. seq.*  Even so, the Supreme Court has made clear that the test of "clearly established law" is not to be applied at this level of generality.

The inquiry of whether a right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." Saucier, 533 U.S. at 201.  For the law to be clearly established, "[t]he contours of the right" must be sufficiently clear that a reasonable official would understand that his conduct violates that right.  Anderson v. Creighton, 483 U.S. 635, 640 (1987).  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [defendant] that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. at 194-95 (citing Wilson v. Layne, 526 U.S. 603, 615 (1999)).  In assessing established law, a court turns to Supreme Court and Ninth Circuit precedent existing at the time of the alleged act.  Osolinski v. Kane, 92 F.3d 934, 936 (9th Cir. 1996) (citation omitted).  In the absence of binding precedent, courts look to available decisions of other circuits and district courts to ascertain whether the law is clearly established.  Id. (citation omitted).

While Mr. Bilal's three claims rest on different legal grounds, they all essentially assert the same right–i.e. the right to a diet specifically including halal meat consistent with a sincerely held religious belief.  Under any legal theory, Mr. Bilal fails to establish that the specific right he espouses is clearly established law.  The issue has not been squarely considered by the Ninth Circuit.  Defendants supply the court with analogous cases from other circuits and district courts concluding that a Muslim prisoner does not have the clearly established right to a halal meat diet under the Free Exercise clause, RLUIPA, or Equal Protection clause.  See Williams v. Morton, 343 F.3d 212, 218 (3d. Cir. 2003) (holding provision of vegetarian diets to Muslim inmates was based on legitimate penological interests and did not violate the First or Fourteenth Amendments);

ORDER – 11

Kahey v. Jones, 836 F.2d 948 (5th Cir. 1988) (holding prisons are not required to respond to particularized religious dietary requests); Phipps v. Morgan, 2006 WL 543896, at *2 (E.D. Wash. March 6, 2006) (holding nutritionally adequate alternatives to halal meat diet do not offend RLUIPA, free exercise, or equal protection); Hudson v. Malony, 326 F. Supp. 2d 206, 211-14 (D. Mass 2004) (granting qualified immunity to officials who did not provide halal meat as part of a Muslim diet).

Given the lack of clearly established law as applied to the facts of this case, a reasonable DOC or SCC official was not on notice that his conduct violated Mr. Bilal's rights. The court grants Defendants' motion for qualified immunity on Mr. Bilal's claims for damages against state officials in their individual capacities.

## IV. CONCLUSION

Defendants should not construe the court's ruling, which rests on grounds of mootness and immunity, as a license to ignore future dietary requests from inmates with sincerely held religious beliefs. The court is compelled to note that it strongly rejects Defendants' contention that Mr. Bilal's case is "factually identical" to Boyd v. Lehman, a case in which this court held that a Muslim prisoner had no right to a halal meat diet under the First Amendment, RLUIPA, or Equal Protection clause. 2006 WL 1442201 at *8 (W.D. Wash. May 19, 2006). This court's decision in Boyd, like the cases cited above, rely on fact-intensive analyses of a prison's interests, including resource allocation, as well as the personal religious significance of a particular diet to a particular plaintiff. While these cases may reflect the "contours of the right" in the context of qualified immunity, they do not provide the Defendants with a definitive answer, nor this court with binding precedent. Indeed, the benefit of exhaustive discovery in Mr. Bilal's case casts serious doubt on whether the State's correctional and mental health institutions can deny a prisoner halal meat under the RLUIPA when his request reflects a sincerely

ORDER – 12

held religious belief.  Evidence produced by the DOC estimates that the price of providing halal meat to Muslim inmates would be minimally more expensive than the standard diet and significantly less expensive than kosher diets.  Hong Decl., Exs. 18, 20, 21.[4]  The fact that the SCC currently provides halal meals to Mr. Bilal and one other Muslim ward illustrates that the practice of accommodating their religious dietary needs may be feasible, if not wholly consistent with an institution's operational interests.  While these questions are not before the court, in light of the growing body of case law on religious accommodation and the cost efficiency evidence unearthed in this case, the court anticipates that both the SCC and DOC Defendants will take future religious dietary requests seriously.

For the reasons stated above, the court GRANTS Defendants' motions for summary judgment (Dkt. ## 70, 71) and dismisses all claims in this matter.  In determining that Mr. Bilal's claims for declaratory and injunctive relief are moot, the court dismisses those claims without prejudice.  The court DENIES Mr. Bilal's motion for partial summary judgment (Dkt. # 81).

DATED this 8th day of December, 2006.

JAMES L. ROBART
United States District Judge

---

[4] The State estimates the following costs per DOC inmate, per day: standard meal at $6.03, halal meal at $6.91, and kosher meal at $12.

ORDER – 13